### CHESS & WYMOND *v.* MARY WHIPPLE.

### J. W. WHIPPLE *v.* CHESS & WYMOND.

[Abstract Kentucky Law Reporter, Vol. 5—864.]

**Release of Surety.**

   When one becomes security on notes under an agreement with the payee of the notes and the principal that the principal is to sell and deliver certain personal property to the payee at designated prices, and the price is to be credited on the notes, and thereafter the payee receives the personal property but pays the price over to the principal instead of crediting it on the notes, and this without the consent of the surety, the surety is discharged.

APPEALS FROM LOUISVILLE CHANCERY COURT.

April 5, 1884.

OPINION BY JUDGE PRYOR:

The notes and mortgage executed by the appellee, Mary Whipple, as surety for the debt of her son, J. W. Whipple, and the contract between the appellants, Chess & Wymond, and J. W. Whipple, were all executed at the same time and a part of the same transaction. Chess & Wymond agreed to purchase of the son of Mrs. Whipple two hundred twenty-five thousand sawed heading of a particular description at a fixed price to be delivered on the cars at Rockport by J. W. Whipple, and when received by Chess & Wymond to be in payment of the three notes for which the mother, Mrs. Whipple, had bound herself as surety. These notes were given for a floating stave factory, tug and barges.

The contract for the sale and delivery of the heading to Chess & Wymond and their agreement to apply the proceeds to the payment of the notes was the indemnity to the mother and the inducement for her to become liable as the surety of her son. The heading was delivered in sufficient quantities, and received by Chess & Wymond, to pay the notes for which the surety had become bound.

The heading was placed on the cars at Rockport but delivered or measured by Chess & Wymond at the city of Louisville, and the latter, instead of applying the proceeds at the fixed price to the payment of these notes, advanced moneys to the son and left the notes unpaid.  In their attempt to enforce the collection of the notes against Mrs. Whipple they claim that the son never executed the contract on his part, but made an independent agreement by which they purchased heading of him to be delivered at Louisville.

They allege that the mother requested them to advance the moneys, which they did in order to enable her son to carry out his business transactions.  The heading was placed on the cars at Rockport, and the parties by changing the place of delivery or making an agreement by which the son was relieved from his obligation to comply with his agreement would have released the surety without her consent.  She became bound upon the faith of the contract between the son and the appellants, and their agreement that the proceeds of the heading should go as a credit on her liability and to permit a mere change as to the place of delivery to defeat the rights of the surety would be sanctioning a fraud on her as well as a violation of the agreement to the extent of her interest.  The appellants, however, did not intend to defraud the mother, and the change in the place of delivery was for the convenience of the parties in interest and made for that reason.  Appellants had purchased the heading at a reduced price, and to enable the son to comply with his agreement and that they might reap the benefits of an advantageous bargain they advanced him the moneys instead of protecting the surety, on the idea that there would be no loss to any of the parties.  The enterprise proved to be a failure, and hence the attempt to make Mrs. Whipple responsible.

Both Chess & Wymond state that Mrs. Whipple induced them to change the terms of the agreement and make the advancement of the moneys to her son; that she had received or stated she had received a letter from the son asking her to make this request, and complying with her wishes they paid the son the money or made advances for him.  Mrs. Whipple makes a positive denial of these statements, and the son states that he never made such a request by letter or otherwise of his mother; and therefore the proof is conflicting on this branch of the case with the circumstances in favor of the appellee.  The original agreements by which she was

bound were in writing, and the notes for which she was liable amounted to $4,500. Chess & Wymond were business men and should be presumed to have known the necessity of having some other evidence of this change of contract, and the agreement of her surety to waive her rights, than mere passing conversations between the parties in interest. Not that the parties are prohibited from showing the verbal request of the mother releasing her indemnity, but where there is a conflict between the parties themselves as to the substance of or as to the existence of any such waiver in considering the question it must be regarded as inconsistent with the character of business men in a transaction of such importance to rely on no other testimony but their own recollection as to what transpired between them and the party sought to be charged to enable them to recover. Here was $4,500 depending upon the consent on the part of Mrs. Whipple to this payment to her son, and it is unreasonable to suppose that she would release all right to indemnity and permit advances to her son without limit, when, as they say, he was writing that he could not get along without money, and assume in effect the payment of the $4,500 for which she had mortgaged her estate.

The presumption from the character of the defense made is that the appellants were impressed with the idea that, the contract as to the heading being between them and J. W. Whipple, these two parties could make any arrangement they saw proper in regard to the delivery and the payment of the money, without consulting the surety; but whether so or not, there is such a conflict in the proof that the chancellor would hesitate to make the mother under the circumstances liable for the three notes, when the evidence shows that a sufficient quantity of heading had been delivered to pay them off. The appellants may have confounded their transactions and interviews with the son, and those with the mother, and in this way made the request of the one apply to the other. The proof, however, as to the request by the mother to pay the son is not of that satisfactory character, when considering the adverse testimony, as would authorize this court to reverse the judgment as to Mrs. Whipple, and it is therefore unnecessary to determine what effect the delivery of the heading at Louisville instead of Rockport had upon the rights of the surety.

As to the appeal of J. W. Whipple, it is clearly shown that he

had settlements in full with the appellees, Chess & Wymond, in June and September and executed receipts. He was present often and saw the heading measured and the quantity refused, and has made no complaint asking for an increased sum until the suit is brought, and in making his defense is speculating on his own conflicting statements both in the pleadings and proof for a recovery.

Judgment *affirmed* on the appeal of *Chess & Wymond v. Mary Whipple* and on the appeal of *J. W. Whipple v. Chess & Wymond.*

*Young & Trabue, Wm. Lindsay, for Chess & Wymond.*

*J. T. O'Neal, E. W. Hines, for Whipples.*